DROSTE et al. v. METROPOLITAN HOTEL SUPPLY CO.

(Supreme Court, Appellate Division, First Department.  February 14, 1902.)

AUTHORITY OF AGENT—FINDINGS.

A person representing that he was buyer for defendant purchased certain produce from plaintiff, who showed that prior to and subsequent to such sale he had purchased produce for defendant, which it had paid for, and that, before making the sale, defendant's place of business was telephoned to, and a person describing himself as defendant's manager stated such person was authorized to buy the goods.  Defendant introduced evidence showing such person was without authority to purchase goods for it, or to receive any goods on its account, and that the interview over the telephone was not as plaintiff stated.  Held sufficient to sustain a finding, in an action for goods sold and delivered, that defendant had conferred on such person authority to make the purchases.

Appeal from trial term, New York county.

Action by Charles F. Droste and another against the Metropolitan Hotel Supply Company.  From a judgment in favor of plaintiffs, and an order denying defendant's motion for a new trial, it appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Gaston A. Robbins, for appellant.

Starr J. Murphy, for respondents.

INGRAHAM, J.  In this case the appellant has submitted a brief discussing the facts, without any reference to the folios of the case, as required by rule 40 of the general rules of practice.  The question presented is mainly one of fact, and in such a case, under the rule,

no discussion of the facts is permitted. We have, however, endeavored to ascertain the facts to which the appellant referred. The action is brought to recover for goods sold and delivered, and the defense is a general denial. Upon the trial the substantial question that was presented was as to the authority of one Kalscheim to act. It appeared that on December 31, 1900, Kalscheim, representing that he was the buyer for the defendant, came to the plaintiffs' place of business, examined the stock of eggs kept by the plaintiffs, and picked out a lot, for which he offered 19 cents a dozen; that the plaintiffs asked 20 cents; that Kalscheim then went out, without making a purchase, but subsequently returned and made an offer to buy the eggs if the plaintiffs would allow him 3 cents a case cartage, and an agreement was reached to sell the lot, amounting to about 230 cases, on those terms; that the plaintiffs then gave to Kalscheim a delivery order upon the West Shore Railroad Company to deliver to the defendant 230 cases of eggs in car No. 14,265, marked "A1991." Subsequently it was ascertained by plaintiffs' salesman that 19 of those cases had been delivered by the railroad company at the plaintiffs' store, and that there were but 206 cases of eggs still in the possession of the railroad company. Subsequently Kalscheim returned to the plaintiffs' place of business, when he was told that a part of the eggs were at the store, and that there were but 206 cases of eggs on the dock. Shortly after a wagon with the name of the Metropolitan Hotel Supply Company on it called at the plaintiffs' store, and these 19 cases of eggs were delivered to this wagon; and the plaintiffs' salesman then gave to the driver of the wagon a ticket of sale for 225 cases of eggs, instead of 230, as required by the first delivery order. A truckman was then called, who testified that he was employed by Kalscheim to cart goods for the defendant; that Kalscheim delivered to the witness the order upon the West Shore Railroad Company; that the driver went to the West Shore Railroad Company with this order, and got 206 cases of eggs from the railroad company, and gave a receipt, which was produced, and which was for 206 cases of eggs for truck No. 1,336, and signed by the witness; that the truckman subsequently delivered the goods of Kalscheim,—just where is not stated, although it does not appear to have been at the place of business of the defendant. The plaintiffs also offered evidence tending to show that, prior to the sale in question, Kalscheim had purchased eggs on account of the defendant; that, before making the sale, one of the plaintiffs had called up the defendant's place of business on the telephone, and spoken to a person there who described himself as Mr. Berry, the manager of the defendant; that he said to Mr. Berry that Mr. Kalscheim was there, and had purchased a bill of goods which he claimed to be for the defendant's account, and asked, "Is this correct?" and that Mr. Berry replied: "We have sent Mr. Kalscheim out to buy goods for us. What kind of goods is he buying?" The plaintiff then referred to the sale that had been made, and wished to know whether Kalscheim was authorized to buy for the defendant, and Mr. Berry said, "'Yes; let the goods come,' or words to that effect;" and those goods were delivered and

paid for by the defendant. A salesman of plaintiffs' testified that Kalscheim subsequently purchased 100 cases of eggs for defendant; that these eggs were not in store, and the salesman gave Kalscheim an order on the dock or railroad company for them; and that the defendant had received and paid for them. The defendant then introduced evidence tending to show that Kalscheim had no authority to purchase goods for the defendant, or to receive any goods on its account; that the interview between the plaintiff and Berry over the telephone was not as testified to by the plaintiff; that the goods purchased on December 31, 1900, were never received by the defendant; and that Kalscheim, after purchasing them in the name of the defendant, retained possession of them, and applied them to his own use. The driver of the cart who obtained these goods from the railroad company was then called by the defendant, and testified that he took the order obtained by Kalscheim from the plaintiff, and went with the truckman who had testified for the plaintiffs to the railroad company; that he got from the railroad company a load of about 206 cases of eggs, which filled his truck. The witness was asked then what he did with the eggs, whether he delivered them to the defendant, whether he received any further instructions or directions from anybody in relation to them, and whether he saw Kalscheim after he had received the eggs, or had ever any conversation with any officer or agent of the defendant in regard to these 206 cases of eggs, all of which testimony was objected to by the plaintiff, which objections were sustained, and to which the defendant excepted. The eggs sold by the plaintiffs to the defendant were in the custody of the railroad company that transported them to New York.

Undoubtedly the delivery of the order for the goods to Kalscheim was a delivery of the goods to the defendant, if Kalscheim had authority to accept a delivery. There is evidence to sustain a finding that the defendant had conferred upon Kalscheim an authority to make purchases for it, and that, when he had made such purchases on behalf of the defendant, the plaintiffs had given him a delivery order for the eggs, which had subsequently been paid for by the defendant. The defendant had thus conferred on Kalscheim an authority to receive a delivery order for the goods purchased by him for the defendant, and the plaintiffs were justified in following the course of business thus ratified by the defendant. The question of the agent's authority was therefore one for the jury, and that question was fairly submitted to them, and their verdict should not be disturbed.

There was, we think, no ruling upon questions of evidence that would require a reversal of the judgment; and the judgment and order are therefore affirmed, with costs. All concur.